**DURANT MILLING COMPANY, Appellant,**

v.

**George F. HALL, Appellee.**

No. 6534.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 28, 1955.

Rehearing Denied Dec. 19, 1955.

John Allen Phillips, II, Durant, Okl., and Robert L. Doss, Denison (on appeals only), for appellant.

Storey, Storey & Donaghey, Vernon, for appellee.

PITTS, Chief Justice.

This appeal involves the granting of a judgment and injunctive relief to appellee, George F. Hall. The said appellee as plaintiff in the trial court and as a grain dealer operating a grain elevator in Belleville, Kansas, established by his own testimony that on or about February 15, 1955, he sold and delivered two loads of bulk shelled corn to C. R. Atkission in Belleville, Kansas, and received therefor from the said buyer a check in the sum of $1,798.75, payable to Hall Mill & Elevator, dated February 1, 1955, signed by J. W. Pitts and drawn on the Atoka State Bank of Atoka, Oklahoma; that, although he had never seen or even heard of J. W. Pitts before, he accepted the said check without any inquiry or question about it being a good check; that he had done business with C. R. Atkission three or four years prior thereto and was relying on the credit and honesty of Atkission but did not ask him to endorse the check as he thought it would be paid when presented in the ordinary course of business; that he did not ask Atkission what he planned to do with the corn and Atkission did not tell him what he would do with the corn but he (the witness) realized as a grain dealer that when he sold and delivered such truck loads of corn to a trucker, such would usually be taken and delivered within the next day or two by the trucker to somebody else.

The record further conclusively reveals that on the following day, February 16, 1955, C. R. Atkission sold and delivered the same two loads of corn to Martin-Lane Company, a partnership, with W. N. Martin as manager and principal owner thereof, located at Vernon, Texas, and received therefor Martin's partnership check No. 6450, of even date being February 16, 1955, for the sum of $2,089.89, payable to C. R. Atkission, drawn on the Waggoner National Bank of Vernon, Texas; that the business transaction was there made between C. R. Atkission and W. N. Martin, acting

for the partnership; that W. N. Martin bought the said corn in good faith and without any actual or constructive knowledge that either appellee, George F. Hall, or J. W. Pitts, had any previous connection with the said corn or any previous sale thereof; that soon thereafter, J. W. Pitts presented the last mentioned check given by Martin to C. V. Tunnell, general manager of Durant Milling Company, a corporation, of Durant, Oklahoma, seeking an accommodation endorsement of the check acceptable to the Durant National Bank, since J. W. Pitts was not very well acquainted in Durant, Oklahoma, except with Tunnell and the said corporation with which he had previously done some business; that C. V. Tunnell was in a hurry on his way to lunch when the endorsement was sought but casually examined the check and saw it was drawn on Martin-Lane Company of Vernon, Texas, which company he knew to be dependable, for which reason he directed his clerk to endorse the said check, which was so endorsed merely as an accommodation; that the said check was thereafter presented to the Durant National Bank, cashed, and on February 18, 1955, sent by the said bank in due course to the Waggoner National Bank at Vernon, Texas, for collection; that the Waggoner National Bank of Vernon declined to honor the same because it had not been endorsed by the payee thereon, C. R. Atkission; that the said check was returned to the Durant National Bank unpaid and was there charged by the Durant Bank against the account of Durant Milling Company and C. V. Tunnell was so notified; that C. V. Tunnell had inadvertently ordered the said check endorsed by his company without procuring the endorsement thereon of the payee, C. R. Atkission, but he immediately called C. R. Atkission by telephone at Vernon, Texas, to see if he would endorse the check and proposed to drive himself to Vernon to procure the endorsement of C. R. Atkission and get the said check cashed at the Waggoner National Bank at Vernon, but Atkission insisted that he be permitted to talk to Mr. Joe Wolverton, president of the Waggoner National Bank, and urged Tunnell to return the check for collection through the usual channels marked for the attention of Mr. Joe B. Wolverton and he (Atkission) would appear and endorse the check upon its arrival; that C. R. Atkission soon thereafter called Tunnell back by telephone and advised him that such an arrangement had been made with Mr. Joe Wolverton.

Appellee, George F. Hall, further testified that four or five days after he accepted the check on February 15, 1955, for the sum of $1,798.75 and delivered the corn to C. R. Atkission, he was advised by his local bank that the said check had been returned unpaid and the amount thereon had been charged back to his account. The record reveals that the said check was introduced in evidence, together with a bank slip attached thereto, showing the check was not honored by the Atoka State Bank because of insufficient funds in the account of J. W. Pitts, the drawer thereof.

Before the Martin-Lane Company check of date February 16, 1955, for the sum of $2,089.89, payable to C. R. Atkission for the sale and delivery of the corn to Martin-Lane Company, could be returned to the Waggoner National Bank by Tunnell for the arranged endorsement of Atkission and for payment by the Waggoner National Bank, it appears that a temporary restraining order had been issued out of the court and served restraining the payment of the check, although the record before us does not reflect the proceedings concerning the granting and issuance of a temporary restraining order.

Predicated upon the factual situation previously stated, appellee, George F. Hall, filed suit against J. W. Pitts, the Waggoner National Bank of Vernon, Texas, C. R. Atkission and Martin-Lane Company, seeking a permanent injunction prohibiting C. R. Atkission from endorsing the check given to him by Martin-Lane Company in payment for the corn and prohibiting the Waggoner National Bank from honoring the check and prohibiting Martin-Lane Company from making further payments to J.

W. Pitts and C. R. Atkission for the corn in question. He likewise sought to have the check in question cancelled and further sought judgment against Martin-Lane Company for his debt in the sum of $2,089.89 and also judgment against J. W. Pitts and C. R. Atkission for any amount they or either of them may owe him.

C. R. Atkission answered disclaiming any interest in the subject matter here involved but admitted that he bought the corn from appellee as alleged and gave the check therefor signed by J. W. Pitts, which check he thought was good and would be paid when presented in due course.

Martin-Lane Company answered to the effect that it bought the corn in question on February 16, 1955, in good faith from C. R. Atkission and gave him on the same date check No. 6450 for the sum of $2,089.89 in payment for the corn; that Martin did not have any notice of appellee's claims or interest in the said corn or that anyone else other than Atkission had any interest in the corn at the time of the sale thereof; and that Martin-Lane Company does not know whom it is justly indebted to for the corn but is willing to pay whoever the court finds to be justly entitled to receive payment therefor upon final adjudication of the matters. It likewise sought recovery of an attorney fee in the sum of $150 payable as to the court may seem just and proper.

The Waggoner National Bank answered to the effect that the check in question, No. 6450 for the sum of $2,089.89, was presented to it for payment before a restraining order was served upon it but was returned unpaid because the same had not been endorsed by the payee thereof, C. R. Atkission, and that the same had likewise been again presented for payment through regular banking channels after the restraining order had been served upon it but the same was again returned to the forwarding bank unpaid because of the restraining order.

Appellant herein, Durant Milling Company, a corporation, intervened in the suit as a result of its interest heretofore shown and seeks to have the temporary restraining order issued by the trial court dissolved and the permanent injunction sought denied in order that the check in question may be rightfully endorsed by the payee, C. R. Atkission, an honored by the Waggoner National Bank. It further alleged that it endorsed the said check in the sum of $2,089.89 as an accommodation and had been out the full amount thereof without any notice of any claim of interest by appellee.

Upon a motion by appellee the case was dismissed without prejudice by the trial court as against J. W. Pitts, but heard without a jury as to all other parties herein mentioned. As a result of the hearing, the trial court entered its judgment awarding appellee the sum of $2,089.89 as against Martin-Lane Company, permanently enjoining the Waggoner National Bank of Vernon, Texas, from cashing the said check No. 6450, payable to C. R. Atkission in the sum of $2,089.89, ordered the check cancelled but directed Martin-Lane Company to pay to appellee the amount of $2,089.89 less an attorney fee of $75 awarded to an attorney, M. G. Poteet, who represented both the Martin-Lane Company and the Waggoner National Bank, for representing Martin-Lane Company, discharged defendant, C. R. Atkission, with his costs and without liability, and denied appellant, Durant Milling Company, any recovery, but adjudged all the costs accruing in the proceedings against the said appellant as intervenor. From the said judgment the said appellant perfected its appeal and urges a reversal of the trial court's judgment as to its interests and that judgment be here rendered for it in the sum of $2,089.89, the amount of the said check involved.

At the request of appellant, the trial court, in support of its judgment, made and filed its findings of fact and conclusions of law, some of which are seriously challenged by appellant. Appellant charges that it was error under the record presented for the trial court to find and conclude that appellant was not entitled to recover anything and to further find and conclude that

Martin-Lane Company is indebted to appellee in the sum of $2,089.89 for the corn sold by appellee to C. R. Atkisson, who thereafter sold and delivered the same corn to Martin-Lane Company as a bona fide purchaser of the said corn in good faith and without any notice of appellee's claims concerning the corn. Appellant further contends in effect that the record does not warrant or justify the issuance of a permanent injunction restraining the Waggoner National Bank of Vernon from honoring the check in question.

Appellee seeks to refute appellant's charges and to recover for himself by claiming that neither C. R. Atkisson or Martin-Lane Company ever had title to the corn in question, although he does not seek to recover the corn. In his supplemental pleadings appellee says in part, "This plaintiff admits that in so far as the Martin-Lane Co. knowing the circumstances under which the corn was obtained from plaintiff that such defendant did not know, but in truth and in fact the corn that was sold to Martin-Lane Co. in exchange for such check in the sum of $2,089.89 was corn that was obtained from plaintiff by theft, by false pretenses. * * *" Such is appellee's contentions made before this court. Yet appellee in effect admits in his pleadings previously quoted that Martin-Lane Company bought the corn in good faith and without notice, even as the said company so claimed and the trial court properly so found in effect, and the evidence conclusively reveals that Martin-Lane Company was a bona fide purchaser of the corn in good faith and without any notice of any claims of any others. Concerning theft of the corn or procuring such by false pretenses, appellee's own pleadings and proof offered refute such claims made by him. Appellee pleaded and testified that he sold and delivered the corn in question to C. R. Atkisson in Belleville, Kansas; he likewise testified that "Mr. Atkisson contracted this corn," but he gave a check for the same signed by J. W. Pitts. The said check introduced in evidence by appellee was dated February 1, 1955, but was not presented for collection for several days after appellee received it on February 15, 1955, without making any inquiry about whether or not it was good. The evidence reveals that the said check was returned by the bank it was drawn on unpaid because of insufficient funds to pay the same, yet there is no showing as to whether or not there were sufficient funds to honor and pay the check at the time it was drawn on February 1, 1955, by J. W. Pitts. However, appellee did allege that he understood J. W. Pitts was insolvent and that he feared Martin-Lane Company would claim it was an innocent, bona fide purchaser of the corn. Appellee offered in evidence the pleadings of C. R. Atkisson who alleged in effect that he purchased the corn from appellee in good faith believing that the check he gave for the purchase and delivery of the corn was good and would be paid when presented in due course for collection. The trial court so found in effect. It therefore appears that appellee's own pleadings and proof offered refutes his claims to the effect that the corn in question was obtained from him by theft or by false pretenses and that neither purchaser received any title to the corn. The record at least conclusively reveals that Martin-Lane Company was a bona fide purchaser of the corn in good faith and without notice of appellee's claims and there is nothing in the record to support a claim that the corn was obtained from appellee by theft or fraudulent pretenses.

This writer, like appellee, does not know J. W. Pitts and never heard of him before. Neither do I know C. R. Atkisson and never heard of him before. Neither of them was a witness in the case and in so far as the record reveals their depositions were never taken. According to the record, however, they are legally liable to appellee for any losses he may have sustained as a result of the transactions reflected by the record rather than innocent parties who knew nothing about the original sale of the corn in question.

Appellant has challenged the trial court's findings and conclusions to the effect that J. W. Pitts obtained the corn from appellee by theft and swindling and that Pitts knew the check given to appellee for the corn

would not be paid when he wrote the check on the grounds that there is no evidence to support such findings and conclusions. These challenges of appellant are sustained on the grounds assigned therefor. There is no evidence that Pitts ever had possession of, saw or touched the corn in question and there are no pleadings or evidence charging collusion between Pitts and Atkission. Collusion could not have existed under the admissions made by appellee and the findings of the trial court. The check signed by Pitts and accepted by appellee in payment for the corn delivered to Atkission was returned unpaid because of insufficient funds in the account of Pitts to pay it and appellee by his proof established such to be true. There is no evidence to the effect that Pitts did not have an account at the bank upon which the check was drawn or that Pitts knew he did not have sufficient funds in the said bank to pay the check when he signed it some two or three weeks before it was presented for payment, but such is not here material since it is conceded and the trial court found that the original sale of the corn was made in good faith. A finding based merely upon a surmise or suspicion must be overturned when challenged.

All matters reflected by the record that affect appellant's interest here shown are before us for review. Appellant presents a point of error charging in effect that appellee is not entitled to judgment for his alleged debt as against Martin-Lane Company and to grant such is against appellant's interest. Martin-Lane Company admits it is indebted either to appellee or appellant but of course not to both of them.

According to the weight of authorities generally it is an elementary rule of law that a seller of personal property, delivered to the buyer by the seller, has no recourse against a subsequent bona fide purchaser of the goods in good faith and without notice of the original seller's interest as a result of his having accepted a faulty check in payment for the original sale of the goods, which fatal check fact was subsequently ascertained as was shown to be true in the case at bar. Applying this rule

of law to the record here presented, appellee is not entitled to recover as against Martin-Lane Company. Appellant's point of error challenging such is therefore sustained. It appears to us that the record before us does not warrant or justify a recovery by appellee against any party involved in this suit unless it would be J. W. Pitts or C. R. Atkission or both of them, but appellee dismissed his alleged action against J. W. Pitts and did not insist upon any recovery against C. R. Atkission.

Rule 682 of the Texas Rules of Civil Procedure, taken from Article 4647, Vernon's Revised Civil Statutes, provides that:

"No writ of injunction shall be granted unless the applicant therefor shall present his petition to the judge verified by his affidavit and containing a plain and intelligible statement of the grounds for such relief."

While appellee swore to his petition for the relief sought, it is our opinion that his pleadings do not satisfactorily comply with the latter part of the quoted rule of procedure. However, assuming that his pleadings are sufficient to meet such requirements, in our opinion the proof does not show that appellee has exhausted his adequate legal remedies for recovery, and the granting of an injunction when there is an adequate remedy at law is error. Burdette v. Bell, Tex.Civ.App., 218 S.W.2d 904; Texas Natural Gas Utilities v. City of El Campo, Tex.Civ.App., 135 S.W.2d 133; Powers v. Temple Trust Company, 124 Tex. 440, 78 S.W.2d 951. It has never been held that an injunction should be granted merely because the relief so furnished would be more speedily obtained than by means of legal remedies. Simms v. Southern Pile Line Company, Tex.Civ.App., 195 S.W. 283, Syl. 4 (Writ Ref.). Neither has appellee excused his own negligence in connection with his sale of the corn so as to be entitled to the issuance of a permanent injunction restraining the Waggoner National Bank from honoring the check in a business transaction which appellee had no connection with, but previous to which, according to his own testimony, he laid a predicate

for sustaining a probable loss to himself when he sold the same corn in a different transaction without exercising good business prudence in the said transaction. Neither do we believe that the trial court was justified in awarding a $75 attorney fee to be deducted from the $2,089.89 for an attorney representing Martin-Lane Company after rendering judgment against the said company on behalf of appellee, or in entering an order cancelling the check in question. We do not believe it was just and proper to adjudge all costs accruing in the proceedings against the appellant as the intervenor.

Therefore, under the record here presented, the judgment of the trial court awarding appellee $2,089.89 as against Martin-Lane Company is reversed and judgment is here rendered that appellee take nothing as against Martin-Lane Company. The order of the trial court granting a permanent injunction, which in law superseded the temporary restraining order, is reversed and both are hereby dissolved and judgment is here rendered denying any injunctive relief. The trial court's order cancelling the check No. 6450 for the sum of $2,089.89, payable to C. R. Atkission, is hereby reversed and it is here ordered and adjudged that the said check be not cancelled, thus removing all impediments and vesting title to the proceeds of the said check in appellant, and authorizing the Waggoner National Bank to honor and pay the said check No. 6450 for the sum of $2,089.89 with or without it being endorsed by C. R. Atkission, who, according to the record before us, has not been enjoined by the trial court from endorsing the same. The judgment of the trial court awarding an attorney fee of $75 for an attorney representing Martin-Lane Company is reversed and judgment is here rendered denying any attorney fee for any party since there is no proof to support such. The judgment of the trial court for the accruing costs against appellant intervenor is likewise reversed and judgment is here rendered against appellee for all of the costs in the case. Reversed and rendered as herein shown.

NORTHCUTT, Justice (dissenting).

I respectfully dissent from the majority opinion herein and I am of the opinion that the judgment of the trial court should be affirmed. The appellant contends that if Martin-Lane Company is to be required to honor the check held by appellant in the amount of $2,089.89 at all, it would be on the theory that title to the corn in question passed to Martin-Lane Company. Then appellant states that the crux of the lawsuit is the answer to the question of whether or not the title to the corn passed in Kansas. Since the appellant, Durant Milling Company, did not plead and prove the laws of Kansas, if they were relying upon the laws of Kansas, it will be presumed that the laws of Kansas are the same as Texas or at least, without pleading and proof, the laws of Kansas and the laws of Texas where the case was tried would control and be presumed, in the absence of such pleading and proof, that the laws of Kansas were the same as Texas on that issue. We think this is so well-established as a rule that no citation of authority should be necessary.

There is no proof in this record that Mr. Tunnell, manager of Durant Milling Company, had the authority to sign the name of Durant Milling Company to the check in question as endorser thereof as this would not be the usual and customary duties of a manager in carrying on the business of such milling company but, be that as it may, the milling company did not pay anything for the check or receive anything for endorsing the same when they endorsed the check. The milling company, if Mr. Tunnell had the authority to endorse the check by signing the milling company's name on the check, became an accommodation party for the purpose of lending its name to J. W. Pitts and became liable upon the check as endorser. Section 29, Art. 5933, Texas Revised Civil Statutes. Then the milling company would be in no better position as to the check than J. W. Pitts.

It is well-settled law of this state that when one secures property by theft or swindling that he does not have any title

thereto. In the case of King v. State, Tex. Cr.App., 213 S.W.2d 541, at page 544, it is stated:

"We remain convinced that the facts are sufficient to warrant the jury's conclusion that appellant came into the possession of the automobile by a false and fraudulent pretext, with the intent, at the time, of depriving the owner of the automobile of the value thereof and to appropriate it to his own use and did so appropriate the automobile, thereby establishing the crime of theft by false pretext. As supporting this conclusion, see, also, Roe v. State, 140 Tex.Cr.R. 387, 144 S.W.2d 1104."

We think there is ample proof to sustain the finding of the trial court that J. W. Pitts knew when he executed his checks that they would not be paid. His actions in going to Durant to get the check here involved cashed instead of depositing the same in the bank to care for the checks given by him is an item of conviction. Pitts had paid no consideration for the check in question and had no legal right to the same other than the fact that Atkission sent it to him but it was not endorsed by Atkission, and was not, without Atkission's endorsement, negotiable. We are of the opinion that there was ample facts to substantiate the findings of the trial court of theft and swindling especially when applied to the check. Pitts knew he was not entitled to the check even though it was sent to him by Atkission. Tunnell knew Pitts had bad checks outstanding and unpaid. If there was no theft or swindling as to the corn, it certainly cannot be said that Pitts did not commit theft or swindling as to the check or the proceeds thereof. The appellee did what he thought was the proper thing to do in securing the injunction to protect the payment of the check in the hands of persons not entitled to recover

upon the same and we think the restraining order and permanent injunction was properly executed to keep Pitts and those claiming through him from cashing a check they had no right to under this record. We agree that the trial court erred in granting the attorneys a fee of $75 but since the appellee did not object to this and, believing that appellee was entitled to the proceeds of the check, we do not think that matter is before us.

Durant Milling Company was not a holder in due course for value but was an accommodation endorser for Pitts. Surely if Pitts had still had the check in his possession under the facts herein, appellee could have stopped payment to Pitts as was done in this case as to appellant. Appellant, as we see this case, being an accommodation endorser of the check to Pitts, not for value or for any consideration, could not recover herein and for the further reason appellant held a check that was not a negotiable instrument and was not when it was endorsed by appellant.

Since Geo. F. Hall sued Martin-Lane Company for his debt for the corn and asked for orders restraining payment of the check in question and recovered only the amount of the check is not a question before us. The only issue is whether the court erred in refusing to permit the Durant Milling Company to recover upon the check in question and enjoining the bank from paying the same and the fact that Durant Milling Company became an accommodation endorser of a check that was in the hands of a party that had no right to cash the same, it had no better rights than Pitts and the check in effect was nothing more than a stolen instrument in the hands of J. W. Pitts.

Therefore, we are of the opinion that the judgment of the trial court should be affirmed.